STATE OF LOUISIANA,
v.
TALMAGE J. GALATAS.
No. 2009 KA 1467.
Court of Appeals of Louisiana, First Circuit.
February 12, 2010.
Not Designated for Publication
WALTER P. REED, District Attorney, and KATHRYN W. LANDRY, Special Appeals Counsel, Counsel for Appellee, State of Louisiana.
JERRY L. FONTENOT, Counsel for Defendant/Appellant, Talmage J. Galatas.
Before: PARRO, KUHN, and McDONALD, JJ.
KUHN, J.
Defendant, Talmage J. Galatas, was charged by bill of information with illegal possession of stolen things valued at over $500.00, a violation of La. R.S. 14:69. He entered a plea of not guilty and was tried before a jury. Defendant was found guilty as charged, and the trial court sentenced him to serve a period of five years at hard labor. The trial court suspended the sentence and placed defendant on active, supervised probation for five years with special conditions. Defendant appealed, assigning the sufficiency of the evidence at trial error. This court affirmed defendant's conviction, conditionally affirmed his sentence, vacated a condition of his probation, and remanded the matter to the district court. Specifically, as a result of our review for error pursuant to La. C.Cr.P. art. 920(2), we noted that the trial court failed to set a specific amount of restitution to be paid as a condition of the defendant's probation (citing La. C.Cr.P. arts. 895A(7) and 895.1 A; State v. Cortina, 632 So.2d 335, 338 (La. App. 1st Cir. 1993)). State v. Galatas, XXXX-XXXX (La. App. 1st Cir. 6/6/08), 986 So.2d 255 (unpublished). After a restitution hearing, the trial court ordered defendant to pay restitution as itemized by the victim in Exhibit S-1 with the exception of the last four items on the list. Defendant now appeals, assigning the restitution order as error. We affirm.

STATEMENT OF FACTS[1]
In the summer of 2005, Timothy Galatas and Guilio Giunta purchased a home located on Tag Along Road in Lacombe, Louisiana. In late August, as Hurricane Katrina approached the coastline, they evacuated to Jackson, Mississippi. Timothy's parents had been taken to his sister's home in Jacksonville, Florida by his brother, defendant. Soon after the hurricane, Timothy's mother was hospitalized because she suffered a stroke. After learning of his mother's hospitalization, Timothy and Giunta traveled to Jacksonville to assist Timothy's parents.
Timothy worked as an operating-room nurse and had previously performed temporary contracts away from Louisiana (commonly referred to as travel nursing). In the aftermath of Hurricane Katrina, Timothy signed a temporary employment contract with a hospital in the Jacksonville area. Timothy testified that he intended to return to his home in Lacombe following completion of his three-month contract and have his parents live with him.
While in Jacksonville, Timothy agreed to allow defendant to live in his Lacombe residence. The camper that defendant lived in had been damaged, and his business office had been flooded. Defendant agreed to pay Timothy's monthly mortgage note payment and utilities, and defendant would be able to operate his extermination business (Galatas Systems) from his brother's residence.
In late September or early October, Timothy and defendant "had words" following an attempt by Timothy's other siblings to place both parents into a nursing home in Florida. Following this verbal confrontation, defendant told Timothy that he was "going to get even" for blocking the attempts to place their parents into a nursing home.[2] Questions and tensions also arose between Timothy and his siblings over how their parents' finances were being handled.
Despite defendant's agreement to pay the mortgage note monthly payment and utilities on Timothy's Lacombe residence, the payments were not made. Timothy later discovered that he had lost possession of his home because the monthly mortgage payments had not been paid. On December 7, 2005, Timothy returned to his Lacombe residence in a U-Haul moving truck to move his possessions from the house. Timothy entered the house and discovered that everything except for a sofa and a table had already been removed. According to Timothy, the house had been "trashed with beer bottles," and the key he had given to defendant was lying on the kitchen table. There was no sign of forced entry into the house. Timothy contacted defendant and asked where all his belongings were. Defendant denied that he had any of his brother's items and suggested Timothy contact the police.
Timothy contacted the St. Tammany Parish Sheriffs Office, and soon made a list of items that were missing from his home. After reporting the missing items, Timothy returned to Jacksonville.
Sergeant Joseph Picone of the St. Tammany Parish Sheriffs Office began his investigation of the complaint shortly after Christmas, 2005. Although Timothy suspected defendant was responsible for the missing items, Sergeant Picone's investigation included a canvassing of the neighborhood where Timothy's home was located. During his canvass, Sergeant Picone encountered Nicole Belsome, a neighbor who lived across the street from Timothy.
According to Belsome, shortly after the hurricane, a man appeared at Timothy's residence and stated that he was Timothy's brother from Chalmette and that he would be working his business from the house. For the next several weeks, Belsome observed activity at the residence. Then, one day in December, Belsome noticed a U-Haul truck at the residence, and she saw defendant and others moving things from the residence into the truck. Belsome testified that the U-Haul truck was there for several days and that she even saw defendant moving things out during the night. Belsome testified that it took defendant much longer to move out of Timothy's house than it took him to move into the house. Belsome identified defendant from a photographic lineup as the person who moved into Timothy's residence and who moved out of the residence.
Prior to speaking with defendant, Sergeant Picone acquired a U-Haul equipment contract in defendant's name for the rental of a truck on December 3, 2005. On January 26, 2005, Sergeant Picone contacted defendant, advised him of the investigation, and asked that he come to the police department to speak about it. Defendant arrived at Sergeant Picone's office and was advised of his Miranda rights. After waiving his Miranda rights, defendant was interviewed regarding Timothy's missing possessions.
Defendant denied that he had taken any of Timothy's belongings, and claimed he only removed his own belongings using his brown pickup truck. Defendant offered Sergeant Picone the opportunity to search his current residence. When Sergeant Picone accepted the offer and asked if they could go immediately to defendant's residence, defendant initially hesitated and inquired whether the search could be conducted the next day. However, defendant subsequently agreed that the search could take place that day.
Defendant accompanied the police to his house. When they arrived, Les Moore, one of defendant's employees, was already inside the residence. During the search, several items that Timothy had reported as missing from his residence were located in a spare bedroom in defendant's house.
Detective Corey Crowe of the St. Tammany Parish Sheriffs Office assisted in the search and testified that the following items were recovered from defendant's residence: music CDs, a cable TV reception box, a JVC video camera,[3] a mirror, and a remote control for a karaoke player. Defendant told Crowe that over the years, he had acquired items from Timothy that were transferred back and forth between them.
Defendant was arrested and originally charged with simple burglary. According to Detective Picone, defendant claimed he only used his brown pickup truck to move his belongings from Timothy's residence to his new home, and that he moved at the end of September, 2005. At no time did defendant tell Detective Picone that Timothy had given all his possessions to him.
Moore testified on defendant's behalf. According to Moore, defendant restarted his business from Timothy's Lacombe residence following the hurricane because the business office had been flooded. Moore testified that he did not participate in moving any of defendant's belongings into Timothy's residence. Moore stated he helped move materials for defendant's business from Timothy's house to defendant's new house off Dedinger Road in Lacombe. According to Moore, sometime in November, 2005, he and Barbara Hall, the office manager, loaded a moving truck in about an hour and fifteen minutes and took it over to defendant's new house. According to Moore, everything he moved was packed in boxes, but he specifically remembered moving a cable TV reception box.[4]
Garland Galatas, defendant's older brother, testified on defendant's behalf. Garland resided in California. Following Hurricane Katrina, Garland traveled to Jacksonville to see his parents. According to Garland, he, defendant, Giunta, Timothy, and Beverly Misrendino (another Galatas sibling) met in the parking lot of the hospital in Jacksonville, where his mother had been admitted. During this meeting, Garland claimed that Timothy stated he was enjoying Florida so much he did not plan to return to Louisiana. Timothy indicated to defendant that he could live in his Lacombe house and anything that was in the house was his, because he did not want it. Garland admitted he never contacted the police or the prosecutors with this information in an attempt to stop the prosecution of defendant.
Giunta denied that he or Timothy ever indicated that they were not returning to Louisiana. Giunta testified that he and Timothy had purchased the Lacombe house five weeks prior to the hurricane and had spent a lot of time repairing the house.
Misrendino testified that after the hurricane, defendant took their mother to Jacksonville and then returned to Slidell. Shortly after, their mother was hospitalized because of a stroke. Misrendino testified that she was present in the hospital parking lot when Timothy stated defendant could use his Lacombe house because he was not returning to Louisiana.
The State called Sergeant Picone as a rebuttal witness. Sergeant Picone testified that at no time did Moore claim responsibility for mistakenly moving any of Timothy's belongings into defendant's house and that he was never contacted or told by any of defendant's siblings that they heard Timothy give defendant permission to dispose of his belongings.
Defendant did not testify.

ASSIGNMENT OF ERROR
In the sole assignment of error, defendant contends that the trial court erred by ordering him to pay restitution arising from criminal acts for which he was never arrested, charged, or convicted. Defendant was ordered to pay restitution for items stolen during the burglary of the victim's home. Defendant notes that he was convicted based on items in his possession, which had been stolen at the time of the burglary. He maintains that, although the State tried to implicate him in the underlying burglary, he was never actually charged with that crime and, thus, it was improper for the trial court to order him to pay restitution for that crime.
When the court suspends the imposition or execution of sentence and places a defendant on probation, it may impose any specific conditions reasonably related to his rehabilitation, including reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court. La. C.Cr.P. art. 895A(7). See also La. C.Cr.P. art. 895.1 A(l) and B(5) (the court may, in its discretion, order placed as a condition of probation, an amount of money to be paid by the defendant to the victim to compensate him for his loss and inconvenience). In ordering defendant to pay restitution as listed by the victim, the trial court in part stated it is entitled to impose restitution for the damage or loss caused by the offense. The trial court concluded that the offense was not limited by the actual charge, but based on the offense established by "clear evidence of theft that was presented during the course of the trial."
In State v. Alleman, 439 So.2d 418, 419 (La. 1983), defendant was required, as a condition of probation, to make restitution to victims of offenses "of which he was accused but not convicted." The Alleman court noted the sentencing judge is authorized by La. C.Cr.P. art. 895A(7) to order restitution for loss caused by the defendant's offense. The court then summarily concluded that the condition was invalid, presumably because there was no evidence to support the order, i.e., that the losses were caused by the defendant's offense. The condition of restitution to other victims, as well as one other condition, was deleted from the sentence. The rest of the sentence was affirmed.
In State v. Elkins, 489 So.2d 232 (La. 1986), defendant was charged in separate bills of information with having received stolen jewelry valued at $200.00 and $500.00, respectively. The jewelry had been stolen from two homes, both of which sustained a substantially greater loss than that reflected by the value of the jewelry. The defendant was not charged with the burglaries and the record contained no evidence implicating her in the burglaries. After entering guilty pleas, the defendant was given a suspended sentence. As one of the probationary conditions, she was ordered to make restitution of $2,335.75 to one of the property owners and $5,000 to the other. The Louisiana Supreme Court stated:
The record before us is barren of evidence of the actual damage to the victims, of whether the stolen jewelry had been returned, and of defendant's participation in the burglaries. Assuming the condition of restitution ordered in this case is not otherwise invalid under Alleman, we hold that restitution is improper absent proof of a defendant's participation in the crime for which restitution is sought.
Elkins, 489 So.2d at 233.
In contrast, in State v. Metlin, 467 So.2d 876 (La. App. 3rd Cir. 1985), the court found that the trial judge did not abuse his discretion in ordering the defendant to make restitution to the victims of burglaries and thefts, where he possessed the things stolen from the victims and the victims were aggrieved parties for losses caused by his offense. The defendant had been ordered to pay restitution to the owners of the stolen things he had received. The Metlin court noted that the victims were aggrieved parties and did suffer a loss caused by the defendant's offense of receiving stolen things, to which the defendant pled guilty in misdemeanor amounts. The court found that this condition of the defendant's probation was permitted under the provisions of La. C.Cr.P. art. 895 A(7) and was reasonably related to his rehabilitation.
Similar to the facts in Metlin, we find in this case that the record includes evidence that the loss in question was caused by defendant's offense (unlike the circumstances presented in Elkins and Alleman). Thus, the trial court was within its discretion when it ordered defendant to pay restitution for the value of the items in question. The sole assignment of error lacks merit.

DECREE
For these reasons, we affirm the trial court's order of restitution against defendant, Talmage J. Galatas, as itemized by the victim in Exhibit S-1, with the exception of the last four items on the list.
RESTITUTION ORDER AFFIRMED.
NOTES
[1] The facts of this case are restated as set forth in the prior appeal.
[2] Timothy requested the State of Florida conduct an evaluation as to whether his parents needed to be placed into a nursing home. The results of the evaluation indicated that neither of his parents required nursing-home care.
[3] As the police were driving away from defendant's residence, they realized that the JVC video camera they had seen in defendant's residence matched the description of the JVC video camera Timothy reported as missing. The police returned to defendant's residence and obtained consent to search for the JVC video camera and seized it.
[4] The cable TV reception box recovered from defendant's residence was matched by serial number to the cable TV reception box issued to Timothy Galatas.